UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **DANIELLE LYNETTE WRIGHT, #579080,** | ) ) ) |
| Plaintiff, | ) ) No. 3:24-cv-00199 |
| v. | ) ) ) |
| **STATE OF TENNESSEE, et al.,** | ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Danielle Wright, who is incarcerated at the Debra K. Johnson Rehabilitation Center (DJRC) in Nashville, Tennessee, has filed a pro se civil rights complaint under 42 U.S.C. § 1983 (Doc. No. 1). In response to Court orders, Wright has since filed an Amended Complaint (Doc. No. 11) and a Second Amended Complaint (Doc. No. 19). She has also filed two motions requesting a scheduling order. (Doc. Nos. 21, 23). The case is before the Court for initial review of the Second Amended Complaint under the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(e)(2) and 1915A.

### I.     LEGAL STANDARD

The Court must conduct an initial review and dismiss the Second Amended Complaint if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A. Review of the Second Amended Complaint to determine whether it states a claim upon which relief may be granted asks whether it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Hill v. Lappin, 630 F.3d 468,

1

470−71 (6th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). Although pro se pleadings must be liberally construed, Erickson v. Pardus, 551 U.S. 89, 94 (2007), the plaintiff must still "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Iqbal, 556 U.S. at 678, upon "view[ing] the complaint in the light most favorable to the plaintiff[.]" Tackett v. M & G Polymers, USA, LLC, 561 F.3d 478, 488 (6th Cir. 2009).

This action was filed under 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. Wurzelbacher v. Jones-Kelley, 675 F.3d 580, 583 (6th Cir. 2012). To state a viable claim under Section1983, the Second Amended Complaint must allege "that a defendant acted under color of state law" and "that the defendant's conduct deprived the plaintiff of rights secured under federal law." Handy-Clay v. City of Memphis, Tenn., 695 F.3d 531, 539 (6th Cir. 2012) (citations omitted).

## II. ALLEGATIONS AND CLAIMS

In the Second Amended Complaint, Wright asserts claims against 18 individuals[1] at two facilities. (Doc. No. 19 at 1−6). At the Women's Therapeutic Residential Center (WTRC),[2] Wright sues Warden Stanley Dickerson; Dr. Cortez Tucker; Nurse Practitioner Talea Brown; psychologist Dr. Renard; Assistant Warden Shakera Kelley (Greer); Records Supervisor Gayle Gaines;

---

[1] Wright does not specify whether she sues the Defendants in their individual capacities, official capacities, or both. The Court assumes for screening purposes that Wright intends to bring both types of claims.

[2] Wright indicates that these Defendants are staff at "WTSP," which the Court infers as referring to the Western Tennessee State Penitentiary. WTRC, where Wright was incarcerated, is located within the Western Tennessee State Penitentiary. See "Women's Therapeutic Residential Center," Tennessee Department of Corrections, available at https://www.tn.gov/correction/state-prisons/state-prison-list/west-tennessee-state-penitentiary/women-s-therapeutic-residential-center.html. It is unclear from the Second Amended Complaint whether each Defendant was employed at WTRC, WTSP, or both. For simplicity, this Order refers to WTRC throughout.

2

Mailroom Supervisor T. Parker; Sergeant C. Smith; Sergeant Crutchfield; Director of Nursing Chance; Health Services Administrator Jazzy Palacios; mailroom employee Shan Detra Simms; and Correctional Officer Kimble. (Id.). Related to her time at DJRC, Wright sues Psychologist Heather Surgeon; Warden Taurean James; Records Supervisor Edmonds; Mailroom Supervisor Quwed; and Mailroom Officer Gray. The Court summarizes the allegations related to each facility below.

### A. WTRC

Wright alleges that Dr. Tucker and Nurse Practitioner Brown admitted Wright to the WTRC infirmary against her wishes to monitor her non-life-threatening elevated blood pressure. (Doc. No. 19 at 2). Chance, the Director of Nursing, supported Wright's admission to the infirmary. (Id. at 4). Wright filed a grievance that was reviewed by Assistant Warden Kelley, who denied the grievance and did not remove Wright from the infirmary. (Id. at 3). Ms. Palacios, the Health Services Administrator, also did not terminate Wright's admission to the infirmary. (Id. at 5). Sergeant Crutchfield "yell[ed] [Wright's] medical information over the radio." (Id. at 4). Wright contends that these Defendants' actions violate the Eighth and Fourteenth Amendments. (Id. at 2−4).

Separate from the infirmary admission, Wright alleges a number of events related to her mail. Records Department Supervisor Ms. Gaines intercepted and held Wright's legal documents. (Id. at 3). Mailroom Supervisor T. Parker "[e]xecuted illegal tampering of [Wright's] mail by not opening privileged mail in her presence." (Id. at 4). Further, Mailroom Employee Simms "[i]llegally tampered [Wright's] mail several times [and] also responded to grievance in supervisor capacity inappropriately." (Id. at 5). Wright contends that these Defendants' actions violated the First, Fourth, and Sixth Amendments. (Id. at 3−5).

Wright also alleges a variety of other events at WTRC:

- Warden Dickerson allowed the confiscation of Wright's "log book pertinent to prison activities," which Wright contends violated the Fourth Amendment, and allowed Wright to be placed "in confinement prior to due process," which Wright contends violated the Sixth, Eighth, and Fourteenth Amendments. (Id. at 1–2).

- Psychologist Dr. Renard conducted an "inappropriate psychiatric evaluation" of Wright. (Id. at 3). Wright contends this violated the Eighth and Fourteenth Amendments. (Id.).

- Sergeant Smith was "involved in a chain of retaliation suspected to have involved [Wright's] commissary sheet from turn in packet then placed an infraction on [Wright] for same reason." (Id. at 4). Wright believes that this violated the First and Fourth Amendments. (Id.).

- Officer Kimble withheld Wright's commissary for non-security reasons (Id. at 6), which Wright alleges violated the Fourth, Eighth, and Fourteenth Amendments. (Id.).

**B.    DJRC**

Wright's allegations and claims about her time at DJRC are largely similar to those regarding WTRC. She alleges that Psychologist Dr. Surgeon "[c]ontinued a cycle of harassment" by conducting a "forced mental health interview," even though Wright refused treatment. (Id. at 3). Wright contends that this violated the Eighth and Fourteenth Amendments. (Id.).

Wright alleges that Warden Jones "allowed [Wright's] liberating official documentation to be held at another facility." (Id. at 5). She also alleges that Records Supervisor Edmonds "exhibited deliberate indifference when addressing [Wright's] emancipating legal documents being

4

unlawfully held from [Wright]." (Id.). Wright contends that these actions violate the First, Fourth, Eighth, and Fourteenth Amendments. (Id.).

Wright alleges that Mailroom Employee Gray tampered with her mail in an unspecified manner. (Id. at 6). She alleges that Mailroom Supervisor Quwed "repl[ied] as a supervisor to grievance on mail tampering, not accurately rectifying the situation." (Id.). Wright contends that these actions violated the First and Fourth Amendments. (Id.).

### III. ANALYSIS

Wright has not alleged facts from which the Court can reasonably infer that any of the named Defendants is liable for a constitutional violation under 42 U.S.C. § 1983. Accordingly, Wright's complaint will be dismissed. The Court addresses Wright's claims in groups based on similar factual allegations.

#### A. Infirmary Admission and Psychological Evaluations

Wright asserts Eighth and Fourteenth Amendment claims based on her involuntary placement in the prison infirmary at WTRC and mental health interviews at both WTRC and DJRC. Incarcerated persons have a liberty interest in refusing medical treatment in some circumstances. Courts have found, for instance, a liberty interest against "bodily restraint" and "to refuse medical treatment such as the administration of antipsychotic drugs." Noble v. Schmitt, 87 F.3d 157, 162 (6th Cir. 1996). Courts have also found a liberty interest in avoiding "the stigmatizing consequences of a transfer to a mental hospital for involuntary psychiatric treatment, coupled with the subjection of the prisoner to mandatory behavior modification as a treatment for mental illness." Vitek v. Jones, 445 U.S. 480, 494 (1980). But Wright does not allege intrusive or stigmatizing treatment. She alleges that she was housed in the prison infirmary for an unspecified length of time for blood pressure monitoring. The only potential "treatment" she

alleges is a mental health consultation interview, which does not rise to the level of intrusive treatment or deprivation of autonomy present in cases where courts have found that an incarcerated person has a liberty interest in refusing treatment. See Noble, 87 F.3d at 162 (forced administration of antipsychotic medication); Vitek, 445 U.S. at 494 (involuntary transfer to inpatient mental hospital and mandatory behavior modification). Accordingly, Wright fails to state a viable Eighth or Fourteenth Amendment claim based on her commitment to the infirmary at WTRC or based on mental health interviews at WTRC and DJRC. Her individual- and official-capacity claims against Dr. Tucker, Nurse Practitioner Brown, Dr. Renard, Psychologist Surgeon, Ms. Kelley (Greer), Sergeant Chrutchfield, Director Chance, and Health Services Administrator Palacios are therefore **DISMISSED** for failure to state a claim upon which relief may be granted.

B.  **Mail Tampering**

Wright asserts First, Fourth, and Sixth Amendment claims based on alleged mail tampering and inspection at both WTRC and DJRC. But the Fourth Amendment does not protect against prison mail searches. See Hudson v. Palmer, 468 U.S. 517, 527−28 (1984) ("A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order."); Hubbard v. Mann, No. 2:21-cv-55, 2021 WL 2845099 (W.D. Mich. July 8, 2021) (collecting cases and holding that "[t]he reasoning in Hudson applies as well to a prisoner's incoming mail."). Accordingly, any Fourth Amendment claim based on alleged mail tampering or inspection is **DISMISSED**. "A prisoner's right to receive mail is protected by the First Amendment. In criminal settings, the Sixth Amendment protects the attorney-client relationship from unwarranted intrusion." Knop v. Johnson, 977 F.2d 996, 1012 (6th Cir. 1992) (citations omitted). The Court will consider Wright's allegations under the First and Sixth Amendments.

Wright does not allege that any of the mail at issue was attorney-client communication related to a criminal prosecution. She has therefore failed to state a viable Sixth Amendment claim. See Wolff v. McDonnell, 418 U.S. 539, 576−77 (1974) ("As to the Sixth Amendment, its reach is only to protect the attorney-client relationship from intrusion in the criminal setting ...").

Under the First Amendment, "prison officials may open prisoners' incoming mail pursuant to a uniform and evenly applied policy with an eye to maintaining prison security." Lavado v. Keohane, 992 F.2d 601, 607 (6th Cir. 1993). But prison officials do not have "unfettered discretion" to open and read "correspondence that impacts upon or has import for the prisoner's legal rights, the attorney-client privilege, or the right of access to the courts." Sallier v. Brooks, 343 F.3d 868, 874 (6th Cir. 2003). As relevant here, an inmate has a First Amendment right to not have certain types of legal mail, including mail received from an attorney or a court, opened outside the inmate's presence. Id. at 876−78.

Wright alleges that Supervisor Gaines intercepted and held her mail. (Doc. No. 19 at 3). She also alleges that Ms. Simms "[i]llegally tampered her mail several times," but does not allege what that tampering entailed or the sender's identity. (Id. at 5). Similarly, she alleges that Officer Gray "[e]mployed deliberate indifference when tampering with [Wright's] mail." (Id. at 6). While these allegations reference unspecified "tampering," the allegations do not include sufficient "factual content that allows the court to draw the reasonable inference" that Supervisor Gaines, Ms. Simms, or Officer Gray opened privileged legal mail outside Wright's presence or otherwise violated the Wright's First Amendment rights. Iqbal, 556 U.S. at 678.

Wright does not allege that Supervisors Quwed and Edmonds were directly involved in any constitutional violation related to her mail. Instead, she alleges that they failed to properly address her mail-related prison grievances. (Doc. No. 19 at 5−6). But when a prison official's only

7

role in an alleged constitutional violation is "the denial of administrative grievances . . . they cannot be liable under § 1983." Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) ("[L]iability under § 1983 must be based on active unconstitutional behavior and cannot be based on 'a mere failure to act.'").

Finally, Wright alleges that Supervisor Parker opened "privileged" mail outside Wright's presence. (Doc. No. 19 at 4). Even assuming that the mail was sent by an attorney or court—which Wright does not allege—Wright still alleges only a single instance in which her legal mail was opened outside her presence. "Such a limited and isolated event does not rise to the level of a constitutional violation." Smith v. Goostrey, No. 23-1025, 2023 WL 5024659, at *2 (6th Cir. Aug. 4, 2023) (affirming dismissal of First Amendment claim based on allegation of single incidence where defendant opened legal mail outside plaintiff's presence).

In short, Wright does not allege a viable § 1983 claim against Supervisor Parker, Supervisor Gaines, Ms. Simms, Supervisor Edmonds, Supervisor Quwed, or Officer Gray. All individual- and official-capacity claims against these Defendants are therefore **DISMISSED** for failure to state a claim upon which relief may be granted.

### C. Remaining Allegations and Claims

Wright alleges that Warden Dickerson at WTRC "performed causation by not taking appropriate action to discontinue confiscation of her logbook pertinent to prison activities infringing her 4th Amendment illegal seizure of her property." However, the Supreme Court has made clear that "the Fourth Amendment proscription against unreasonable searches and seizures does not apply within the confines of the prison cell." Hudson, 468 U.S. at 526. Wright also alleges that Warden Dickerson at WTRC "allowed her to be constantly harassed placed in confinement prior to due process and ultimately transferred to another facility." Wright contends that these

actions violate the Sixth, Eighth, and Fourteenth Amendments. But incarcerated individuals have "no inherent constitutional right to be confined in a particular prison or to be held in a specific security classification." Nunez v. FCI Elkton, 32 Fed. Appx. 724, 725 (6th Cir. 2002). Further, placement in solitary confinement or secure housing does not trigger a liberty interest (or any other constitutional interest) unless the confinement constitutes an "atypical, significant deprivation." Sandin v. Conner, 512 U.S. 472, 486 (1995). Wright alleges no such deprivation here, so she has failed to state a viable constitutional claim. All individual- and official-capacity claims against Warden Dickerson are therefore **DISMISSED** for failure to state a claim upon which relief may be granted.

Wright alleges that Sergeant Smith was "[i]nvolved in a chain of retaliation suspected to have involved [Wright's] commissary sheet from turn in packet then placed an infraction on [Wright] for same reason." (Doc. No. 19 at 4). She also alleges that Officer Kimble unlawfully withheld her commissary. (Id. at 6). She contends that this violated the Fourth, Eighth, and Fourteenth Amendments.[3] (Id.). But "there is no constitutional right of access to a jail or prison commissary." Vick v. Core Civic, 329 F. Supp. 3d 426, 451 (M.D. Tenn. 2018) (collecting cases). All individual- and official-capacity claims against Sergeant Smith and Officer Kimble are therefore **DISMISSED** for failure to state a claim upon which relief may be granted.

Finally, Wright alleges that Warden James "[p]erformed causation by allowing [Wright's] liberating documentation to be held at another facility." (Doc. No. 19 at 5). She contends that this

---

[3] To the extent Wright intends to raise a First Amendment retaliation claim against Sergeant Smith, she has failed to state a claim upon which relief may be granted. "This type of retaliation claim requires a prisoner to establish three well-known elements: that the prisoner engaged in activity protected by the First Amendment, that the defendant took a harmful action against the prisoner, and that the action was caused by the prisoner's protected activity." Phillips v. Tangilag, 14 F.4th 524, 539 (6th Cir. 2021). Wright does not allege that she engaged in any First Amendment protected activity or that Sergeant Smith took harmful action against her as a result of such activity.

violated the First, Fourth, Eighth, and Fourteenth Amendments. (Id.). Wright's allegations do not specify the nature of the "liberation documentation" at issue. Nor do the allegations specify what role Warden James played in "allowing" the documentation to be held at another facility, how long the documents were held at another facility, or what prejudice Wright suffered. Wright has therefore failed to allege "sufficient factual matter, accepted as true, to 'state a claim that is to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); See New Albany Tractor, Inc. v. Louisville Tractor, Inc., 650 F.3d 1046, 1050 (6th Cir. 2011) ("[W]e may not accept conclusory legal allegations that do not include specific facts necessary to establish the cause of action." (quotation marks omitted)). Wright's individual- and official-capacity claims against Warden James are therefore **DISMISSED** for failure to state a claim upon which relief may be granted.

## IV. CONCLUSION

For the reasons above, this action is **DISMISSED WITH PREJUDICE** as to all Defendants for failure to state a claim upon which relief may be granted under Section 1983. 28 U.S.C. §§ 1915(e)(2)(B), 1915A.

In light of this disposition, Wright's pending motions for scheduling orders (Doc. Nos. 21, 23) are **DENIED**.

This is the final order in this action. The Clerk **SHALL** enter judgment. Fed. R. Civ. P. 58(b)(1).

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE